IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ERNEST HUNTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:12-cv-431-CSC |
| | ) (WO) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I.  Introduction**

On August 27, 2008 the plaintiff, Ernest Hunter, filed a Title II application for a period of disability and disability benefits and a title XVI application for supplemental security income. (R. 10; 133; 135). Hunter alleges disability beginning March 13, 2008. (R. 11; 133; 135). After the claims were initially denied, Hunter requested and, on March 24, 2010, received a hearing before an administrative law judge ("ALJ"). (R. 28). Following the hearing, ALJ Stephen Carnes denied the claim on May 19, 2010. (R. 23). On March 30, 2012, the Appeals Council rejected a subsequent request for review. (R. 1). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination[3] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his or her former occupation?
> (5) Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Hunter was born on February 9, 1964. (R. 133). He was 46 years old on the date the ALJ issued an opinion in this case. (R. 23, 133). He has a high school education. (R. 36). His past employment history includes work as loading and unloading

---

[4]*McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. *See Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

trucks for an apparel company, assembling signs, assembling automotive seatbelts, and bagging potatoes. (R. 39, 59). Hunter alleges that he is disabled due to epilepsy, hypertension, and chronic sinus infections. (R. 31, 41).

**B.     The Findings of the ALJ**

The ALJ found that Hunter's epilepsy and hypertension were severe impairments. (R. 12). Due to a lack of medical evidence, the ALJ also found that the Hunter's sinus infections were not a severe impairment. (R. 13).

The ALJ concluded that Hunter does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13).

The ALJ determined that Hunter

> has the residual functional capacity to perform a full range of work at all exertional levels as he has no exertional impairments but with the following nonexertional limitations: The claimant should never work around unprotected heights, moving machinery, or drive automotive equipment. [Hunter] experiences a mild to moderate degree of pain lasting for a minute or so and occurring two to three times a week.

(R. 13).

The ALJ found that Hunter "is capable of performing past relevant work as a Shipping and Receiving Clerk, Assembler, Potato Bagger and Seat Belt Assembler." (R. 20). Alternatively, the ALJ found that "other jobs exist[] in the national economy that he is also able to perform." (R. 22). Therefore, the ALJ concluded that Hunter is not disabled. (R. 23).

**C.     Issues.**

Hunter presents the following issue for review:

Whether the ALJ failed to fully develop the record when the ALJ did not contact Hunter's treating physician to clarify an inconsistency between the physician's conclusory seizure evaluation report and the medical record.

(Doc. 11 p. 4).

### IV.  Discussion

On April 7, 2009, Hunter's treating physician, Dr. Roland Yearwood, completed a seizure disorder evaluation form. (R. 241-42). Dr. Yearwood indicated that, for approximately 2-3 hours during and after a seizure, Hunter's activities were affected due to loss of consciousness and a postictal period characterized by loss of cognitive function. (R. 242). The final question on the form was as follows:

> If drug and/or alcohol use were to stop, would there be any change in the above stated limitations?
>
>          Yes              No              Not Applicable

(R. 242).

The court notes that, if, in Dr. Yearwood's opinion, Hunter was engaged in alcohol use that was *not* aggravating his seizure disorder, then Dr. Yearwood would have circled "No" rather than "Not Applicable" in response to the question. Instead, Dr. Yearwood circled "Not Applicable," thus indicating that, to his knowledge, at the time of his response, Hunter was not engaged in drug and/or alcohol use. However, Hunter admits that, "as is evident throughout the record, . . . Hunter's medical records indicate periods of . . . alcohol

use." (Doc. 11 p. 7).

Despite this admission, which is inconsistent with Dr. Yearwood's conclusory response to the question regarding alcohol use, Hunter argues that the ALJ erred as a matter of law by "fail[ing] to recontact Dr. Yearwood regarding any inconsistencies between the evaluation completed by Dr. Yearwood and his [later] treatment notes" indicating that Hunter *was* using alcohol against Dr. Yearwood's advice. (Doc. 11 p. 5; R. 247; R. 265; R. 322-23). In support of this argument, Hunter relies on *Johnson v. Barnhardt*, 138 Fed. Appx. 266 (11th Cir. 2005), an unpublished panel decision in which the court stated:

> In making disability determinations, the Commissioner considers whether the evidence is consistent and sufficient to make a determination. If it is not consistent, the Commissioner weighs the evidence to reach her decision. If, after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physicians.

138 Fed. Appx. at 270 (citing 20 C.F.R. § 404.1512(e) (repealed eff. March 26, 2012, 77 F.R. 10655, 10656)); *see also* 20 C.F.R. § 404.1520b(c) (eff. March 26, 2012, see 77 FR 10651-01) (providing that where a disability determination cannot be reached due to an inconsistency in an underdeveloped administrative record, the Commissioner has the discretion to determine how to resolve such an inconsistency and "may" choose to do so by recontacting a treating physician).

Under *Johnson*, an ALJ is only required to "seek additional information or recontact" the treating physician if, "after weighing the evidence, the Commissioner cannot reach a determination" because the evidence contains unresolvable conflicts or inconsistencies due

6

to an underdeveloped record. *Johnson*, 138 Fed. Appx. at 270; *see also* 20 C.F.R. § 404.1520b(c); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997) ("[T]he ALJ has a basic obligation to develop a full and fair record."). However, when, as here, the record is already sufficiently developed for the ALJ to resolve conflicting or inconsistent evidence, the ALJ is entitled to weigh the evidence "and reach [a] decision." *Johnson*, 138 Fed. Appx. at 270; 20 C.F.R. § 404.1520b.

In this case, as Hunter readily admits, there is an inconsistency between Dr. Yearwood's conclusory response to the question regarding alcohol use and the record as a whole. An ALJ is entitled to disregard the opinion of a treating physician when the record substantially supports the conclusion that "the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). After reviewing the medical record and the evidence as a whole, the ALJ assigned little weight to Dr. Yearwood's opinion that the question about the effects of ceasing alcohol use was "Not Applicable." The ALJ explained:

> I give little weight to Dr. Yearwood's seizure disorder evaluation as it appears to contain inconsistencies, it contrasts sharply with the doctor's own treatment notes, and it is without substantial support from the other evidence of record. Dr. Yearwood indicated that the claimant had seizures > 1/week. This is in direct contrast to Dr. Yearwood's own treatment notes which show that the claimant's epilepsy was described as stable on March 5, 2009. He was seizure free during the period March 5, 2009 to May 7, 2009; in fact on April 7, 2009, the same day Dr. Yearwood completed the above evaluation, he wrote in his

> treatment notes that the claimant had been seizure free since his last visit. On July 28, 2009, the claimant had a seizure after drinking beer, but thereafter, Dr. Yearwood wrote that the claimant continued to remain seizure free on August 25, 2009 and his epilepsy was described as stable on January 14, 2010.
>
> Dr. Yearwood indicated in the seizure evaluation that the claimant had been compliant with prescribed treatment/medication. This is also in direct contrast to Dr. Yearwood's own treatment notes which show that the claimant was non-compliant with treatment/medication on January 7, 2008; September 10, 2008; January 13, 2009; February 14, 2010, and March 8, 2010. When asked if drug and/or alcohol use were to stop, would there be any change in the above stated limitations, Dr. Yearwood responded by saying not applicable. It is reasonable to assume that if alcohol use were to stop, there would certainly be a change in the above stated limitations. There have been significant periods of time since the alleged onset date during which the claimant has consumed alcohol and admitted it on several occasions as evidenced in the medical records dated January 3, 2008, December 29, 2008; January 13, 2009; March 5, 2009; July 28, 2009; December 11, 2009; January 14, 2010 and March 8, 2010. On several of these dates, it was believed that the claimant's seizure activity was caused by the claimant's alcohol abuse, and at several points in the record the doctor counseled the claimant against consuming alcohol with a seizure disorder.

(R. 19).

The court has reviewed the evidence cited by the ALJ, and the record as a whole, and concludes that the adequately developed record substantially supports the ALJ's explicitly stated reasons for rejecting Dr. Yearwood's April 7, 2009, response to the question about alcohol use.  Further, the record supports the ALJ's conclusion that Hunter's seizures were aggravated by noncompliance with Dr. Yearwood's advice to stop drinking. *See*, *e.g.*, Dr. Yearwood's treatment notes.  (R. 247 (dated March 5, 2009, stating "Patient presents for follow up with a history of epilepsy – stable but will need to revaluate his dilantin level. . . . He is *still* drinking." (emphasis added)); R. 265 (dated July 28, 2009, stating"Patient also

8

with a history of epilepsy - states that he had a seizure after having a couple of beers; he was counseled regarding the importance of consuming alcohol with a history of epilepsy."); R. 323 (dated January 14, 2010, stating "Patient present for follow-up with a history of epilepsy - noted to be controlled.  He is still drinking however and was counseled accordingly."); R. 322 (dated March 8, 2010, stating, "Patient also with a history of epilepsy - noted to have a subtherapeutic dilantin level.  He was noted to have an elevated liver function test - most likely secondary to alcohol use and he was counseled regarding the consumption of alcohol in light of his elevated liver function test and his history of epilepsy")).

Moreover, contacting Dr. Yearwood to further develop an already-adequate record would have been a particularly fruitless exercise in this case.  The ALJ found that Hunter was also noncompliant with his seizure and hypertension medications that would restore ability to work. (R. 15, 18).  "'[R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability.'" *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)).  Hunter has not challenged the ALJ's determination that a finding of disability is precluded by his noncompliance with prescribed medications without good cause. (R. 18).  The record substantially supports that finding.  Neither uncritical acceptance of Dr. Yearwood's questionnaire response about the effects of alcohol nor further development of the record would have altered the ALJ's ultimate conclusion that noncompliance with treatment precludes a finding of disability in this case.  Therefore, reversible error cannot be predicated

on the ALJ's decision not to contact Dr. Yearwood for further explanation about the effects of alcohol on Hunter's epilepsy. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error standard in a social security case).

## V. Conclusion

For the reasons as stated, the court concludes that the decision of the Commissioner denying benefits to Hunter should be affirmed. *See Landry v. Heckler*, 782 F.2d 1551, 1551-52 (11th Cir. 1986) ("Because the factual findings made by the [ALJ] . . . are supported by substantial evidence in the record and because these findings do not entitle [the claimant] to disability benefits under the appropriate legal standard, we affirm.").

The Court will enter a separate final judgment.

Done this 24th day of June, 2013.

                  /s/Charles S. Coody
                  CHARLES S. COODY
                  UNITED STATES MAGISTRATE JUDGE